**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RACHEL SWANSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 24-1622 |
| v. ) | Judge Nora Barry Fischer |
| ) | |
| DR. DON CHAPMAN, DDS, PLLC, and ) | ECF No. 36 |
| DONALD C. CHAPMAN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

In this action, Plaintiff, Rachel Swanson, alleges that Defendants, Dr. Donald C. Chapman and his dental practice company, Dr. Don Chapman, DDS, PLLC, terminated her employment because she opposed unlawful practice(s) of sexual harassment - a retaliatory termination in violation of (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a); the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. § 955(e); and the West Virginia Human Rights Act, W. Va. Code § 16B-17-9(7)(C).[1]  (Docket No. 19, Plaintiff's Amended Complaint).

Presently before the Court is Defendants' Motion for Summary Judgment and the parties' responsive briefings, concise statements of material fact, and supportive exhibits.  (Docket Nos. 36-48).  Defendants' motion rests solely on Dr. Chapman's averment that Plaintiff does not (and

---

[1] The individual Defendant is a Pennsylvania resident, and his professional limited liability company has a principal place of business in West Virginia.  (Docket No. 19 at ¶¶ 5-6).  Plaintiff worked for Defendants from her home and in the dental practice's Pennsylvania and West Virginia office locations.  Defendants operated four (4) dental offices at that time.  (Docket No. 41 at 2 n. 1).

cannot) "meet the initial factor" of her *prima facie* claim, which requires that she prove she engaged in protected activity by "opposing" unlawful conduct. (Docket No. 36 at 2; Docket No. 38; Docket No. 46).[2] Defendants' motion having been fully briefed, and the Court having afforded it full consideration and concurred in Plaintiff's objections to it as unfounded, said motion will be denied for the reasons and by the Order set forth below.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Factual History

The full relevant factual history of this litigation is presented in Plaintiff's responsive pleadings. (Docket Nos. 41-44). *See also* n. 6, *infra*. In sum, these claims arise from Plaintiff's employment and her expressly communicated complaints and objections to (1) other female employees' subjection to sexual harassment and (2) the timing and nature of Defendants' response "(or lack thereof)" to those employees' complaints, reported directly to him, of sexual harassment by Dr. John Powe ("Powe"), a periodontist employed/retained by Defendants beginning in early 2023. (Docket No. 41 at 1; *see generally,* Docket Nos. 41-44).[3]

More specifically, Plaintiff was employed as Defendants' Chief Operating Officer from July 2020 through February 2024, and in that position generally handled "human resources" ("HR") issues, including complaints of sexual harassment, in the absence of an HR department or

---

[2] As Plaintiff observes, Defendants fail to provide authority as required by this Court's Practices and Procedures, and more generally. (Docket No. 41 at 2). Apart from its statement of the standard of review, the legal analysis of Defendants' Brief in Support is presented in two paragraphs with citation to one (1) case in support of the elements of a Title VII retaliation claim and no cases in support of Defendants' extraordinary assertion that Plaintiff did not "oppose" an unlawful practice because she "simply . . . voiced her personal opinion about" Defendants' handling of the investigation in a "very direct" manner. (Docket No. 38 at 4). Defendant's Brief in Reply adds one (1) additional case, inapposite to the principle for which it is cited. (Docket No. 46 at 2-3). *See* Section IV, *infra*.

[3] Powe's alleged sexual harassment included both verbal advances and inappropriate physical contact. (*Id.*). Defendants' pre-hiring background check of Powe indicated he had been acquitted of a criminal charge of, Dr. Chapman believes, inappropriate physical conduct (kissing a patient). (Docket No. 45-1 (Defendant's Deposition) at 26-27).

2

other designated employee. (Docket No. 19 at ¶¶ 11-12, 19).[4] In May 2023, a female employee whom she supervised reported that Powe had made an unwelcome/inappropriate sexual remark; Plaintiff reported it to Dr. Chapman, who appeared to dismiss it. (Docket No. 41 at 4). *See also* Docket No. 42 at ¶¶ 10-11, 14-17).

In late August 2023, an employee informed Plaintiff that Powe sexually harassed her a few days prior and had unwanted/inappropriate physical contact with another employee at a practice office earlier that month. Both women then told Plaintiff that they had informed Dr. Chapman of the incidents within a day of their occurrence, he "directed both of them not to tell Plaintiff what occurred", and although he said he would handle it, they felt nothing was being done. With the employees on the call, Plaintiff confronted Dr. Chapman regarding these complaints; Dr. Chapman indicated that he did not want her to know because he had anticipated she would be quite upset and unreservedly express it ("freak[ ] out"). (Docket No. 41 at 5*; Docket No. 42 at ¶¶ 18-38).[5]

In that and subsequent conversations, Plaintiff emphatically communicated to Dr. Chapman that she was distressed that: the practice had failed its employees; what Powe did was "not ok"; Dr. Chapman had kept knowledge of the alleged sexual harassment and inappropriate touching from her; and (in her strong opinion) Defendants were failing to appropriately address the very serious matter of Dr. Powe's misconduct - including by failing to (1) promptly obtain legal/professional/HR guidance regarding what investigation/action(s) to take as to Powe (*e.g.*,

---

[4] In addition, the record reflects that at a meeting of Defendants' approximately 32 employees in May 2023, Dr. Chapman directed that employee questions/concerns (other than those regarding marketing or finance, which were handled by the two managing employees in those departments/positions) should be communicated to Plaintiff. (Docket No. 45-1 at 8-9, 16-17, 69). The Court notes that no particular employment position/responsibility is required for protection from retaliatory termination under Title VII. Nor do Defendants cite any law supporting their apparent belief that an objecting employee must be specially situated as to the unlawful conduct complained of (*e.g.*, a victim or eyewitness) to be protected from retaliation for complaining in opposition to it. *See* Section IV, *infra*.

[5] *See also* Docket No. 45-1 at 43-44, 46) (Dr. Chapman's recounting that when Plaintiff called him she was "mad" and "pretty upset"; he deduced she was calling about the employees' complaints against Powe and responded: "this is why I didn't want you to know").

3

perhaps disciplining Powe and/or suspending his employment, and (2) institute practice procedure changes sufficient to protect employees (and perhaps patients) from sexual harassment. (Docket No. 42 at ¶¶ 34-48; *see also* Docket No. 19 at ¶¶ 32-37). When requested by Dr. Chapman, Powe refused to do sexual harassment training and, after additional incident(s) of sexual harassment/misconduct, his employment was ultimately terminated on October 12, 2023. (Docket No. 42 at ¶ 49-51; Docket No. 45-1 at 51-56).

Dr. Chapman's working relationship with Plaintiff became strained throughout the interval of tension over Powe, during which her "pushing" frustrated and annoyed him, as he acknowledges in his deposition testimony. (Docket No. 42 at ¶ 53, citing testimony exhibits). And it continued to deteriorate as Dr. Chapman felt he could no longer trust Plaintiff, accused and reprimanded Plaintiff for alleged wrongs, reduced her work, and excluded her from meetings. (Docket No. 19 at ¶¶ 38-47; *cf.* Docket No. 42 at ¶ 54). Plaintiff was terminated approximately four (4) months later, on February 6, 2024, on the allegedly pretextual grounds of the elimination of her position due to financial difficulties. (Docket No. 19 at ¶¶ 48-55).

In response to Plaintiff's March 4, 2024 Equal Employment Opportunity Commission ("EEOC") Charge of discriminatory termination (prepared by his counsel and which he reviewed), Dr. Chapman indicated that once Plaintiff became aware of the sexual harassment complaints, she "openly and at times disrespectfully and unprofessionally challenged [him] about the situation and how it was being handled and made [ill-informed] accusations about [Defendant's] response to the complaints". (Docket No. 42 at ¶ 39).

**B.     Procedural History**

Plaintiff has properly exhausted her administrative remedies, and timely filed her initial Complaint on November 24, 2024 and Amended Complaint on March 6, 2025. (Docket Nos. 1,

17 and 19). Defendants' Motion for Summary Judgment was filed on September 12, 2025, with the Brief in Support following the next day. (Docket Nos. 36 and 38). Said motion was thereafter fully briefed as set forth above. Plaintiff's subsequently filed Motion for Sanctions (Docket No. 49) remains pending completion of responsive filing later this month.

### III.    APPLICABLE LEGAL STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party,[6] the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a) & (c)(1)(A). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non-movant's burden of proof. *Id*. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (quoting FED.R.CIV.P. 56(e)) (emphasis added by *Matsushita* Court).

---

[6] *See e.g.*, *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007) (noting that the court must interpret the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986); *id.* at 250 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."). *See also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).[7]

## IV. DISCUSSION

Title VII outlaws retaliation for opposing discrimination:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). *See also* PHRA, 43 Pa. Stat. § 955(e), and WVHRA § 16B-17-9(7)(C).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006), quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995).[8]

Defendants remarkably posit, without support, that Plaintiff's "pushing [Dr. Chapman] to move faster with the investigation . . . is not opposing discrimination in the workplace but instead voicing a personal opinion" about Defendants' handling of the complaints. (Docket No. 38 at 2). Defendants' later assertion to the contrary notwithstanding, the alleged sexual harassment is the

---

[7] In summary, the inquiry under a Rule 56 motion is whether the evidence of record (a) presents a genuine dispute over material facts requiring submission of the matter to a jury for resolution or (b) is so one-sided that the movant must prevail as a matter of law.

[8] As Plaintiff observes, Defendants' motion does not contest the evidentiary sufficiency of other elements of her *prima facie* claims.

6

"issue", and not the "backdrop", in this litigation,[9] and Plaintiff's complaints regarding Powe's sexual harassment of other of Defendants' female employees and her admonitions/insistence it be promptly addressed were a quintessential example of an employee opposing an unlawful employment practice.[10] (*Cf.* Docket No. 46 at 1).

As Plaintiff observes, "[e]ven a cursory review of relevant precedent from the Supreme Court, the Third Circuit, and other sources makes clear" that Defendants' motion should be denied. (Docket No. 41 at 2) (quoting *Crawford*, 555 U.S. at 276) (the term "oppose" under Title VII carries its ordinary meaning of "'[t]o resist or antagonize . . .; to contend against; to confront; . . . .'");[11] *id.* (quoting *Moore*, 461 F.3d at 342) (noting, where white employees complained that supervisor was treating black employees less favorably, that "'[o]pposition' to discrimination can take the form of 'informal protests of discriminatory employment practices, including making complaints to management'").[12]  *Cf id.* at 9 (quoting *Moore, supra*) (observing that Title VII's protection is not limited to those opposing "their own mistreatment or [that] of their own . . . protected class"); *id.* (quoting *Moore, supra*) ("Protected opposition includes actions such as:

---

[9] (Docket No. 46 at 1).

[10] (Docket No. 48 at 9-10) ("Complaining about an employer's response to a sexual harassment complaint is just as protected as the complaint of sexual harassment itself. . . . [B]ecause, in cases involving coworker harassment, an employer has a duty to take "reasonable steps to discover and rectify acts of sexual harassment by its employees.") (citing *Doe v. Manor Coll.*, 479 F. Supp. 3d 151, 170 (E.D. Pa. 2020); *Huston v. P&G Paper Prods. Corp.*, 568 F.3d 100, 108 (3d Cir. 2009)).

[11] *See also Crawford*, 555 U.S. at 276 ("When an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity."); *id.* (concluding that employee's "ostensibly disapproving account of sexually obnoxious behavior . . . would certainly qualify in the minds of reasonable jurors as 'resistant' or 'antagonistic' to [it]")).

[12] In further response to Defendant's assertion that Plaintiff merely expressed an "opinion" and desire to interfere, Plaintiff notes that a Title VII retaliation plaintiff need have only a reasonable and good faith belief of a violation to have engaged in protected activity. (Docket No. 41 at 3-4) (citing *Moore*, 461 F. 3d at 341; *Kengerski v. Harper*, 6 F.4th 531, 537 (3d Cir. 2021) (holding that employee engages in protected activity when she holds an objectively reasonable belief of a hostile work environment)).  And that "[t]here is little . . . difference between the "reasonable belief" standard for protected activity set forth in cases like *Kengerski* and *Moore* and [Plaintiff]'s 'opinion' that her employer was falling short of its legal obligations under Title VII. . . .  In short, [Plaintiff]'s opinion was an oppositional one." (Docket No. 41 at 8-9).  The Court concurs.

complaining or threatening to complain about alleged discrimination against oneself or others. . . ."). Here, as clearly detailed in Plaintiff's responsive filings, the record evidences material fact questions - supported in the deposition testimony of Plaintiff, Dr. Chapman, and other affected employees – regarding Plaintiff's confrontations with Dr. Chapman, opposition to Powe's sexual harassment of other of Defendants' female employees and objections to Defendants' delayed resolution. *See e.g*., Docket No. 48 at 2-4 (bullet-pointing material fact questions as well as undisputed supportive facts).

Defendants contend that Plaintiff did not "engage in protected activity" because she "never alleges she was a victim", or a witness, or an invited participant in the investigation. (Docket No. 38, Docket No. 46 at 1-2).[13] That contention is meritless; Defendants cite no authority to the contrary. Rather, Defendants' reliance on *Qing Qin, v. Vertex, Inc*., 100 F.4th 458 (3d Cir. 2024) (Docket No. 46 at 2-3) is misguided. The case, in reinforcing the proposition that "an employee is protected from retaliation when the employer perceives [him/her] to have engaged in protected activity", simply does not stand, as Defendants would have it, for the proposition that Title VII's protection extends only to victims and witnesses. *Compare* Docket No. 46 at 3 *with* Docket No. 48 at 5 (citing EEOC-CVG2016-1, Enforcement Guidance on Retaliation and Related Issues, Protected Activity: Examples of Opposition § II(A)(2)(e)); Docket No. 41 at 9); *id.* ("*Qing Qin* does not hold that Title VII only protects those who complain about discrimination against themselves; it just happened to be a case where the employee was complaining about discrimination against himself.").

---

[13] *See also* Docket No. 46 at 2 ("She did not raise a concern about her being victimized but instead used the opportunity to try and tell the owner how to run his business better and that she wanted to get involved. Dr. Chapman explained he was handling it and she should not be involved. It was a simple straightforward request but it was ignored.").

Finally, Defendants' assertion that the written response to the investigation of Plaintiff's EEOC Charge[14] is inadmissible hearsay is also made without citation to supportive caselaw and is similarly meritless. (Docket No. 38 at 2, 4). The Court concurs with Plaintiff's succinct and correctly supported rejection of that fundamental mischaracterization/misunderstanding of the law. (Docket No. 41 at 6-7); *id.* at 6 ("A statement made by an opposing party, its agent, or a person authorized to make a statement on the subject, is not hearsay." (citing Fed. R. Evid. 801(d)(2)(C)&(D)).

Accordingly, the Court finds that Plaintiff has more than sufficiently evidenced that she opposed an unlawful employment practice, *i.e.*, Defendant's failure to redress Powe's sexual harassment of female employees in a reasonably timely and/or meaningful way. In other words, a jury could reasonably find that she "engaged in protected activity", as required to maintain her claims for unlawful retaliation under Title VII and parallel Pennsylvania and West Virginia laws. Defendants' motion for summary judgment on grounds that she has and could not will therefore be denied.

An appropriate Order follows below.

---

[14] *See* Section II(A), *supra.*

## ORDER

**AND NOW**, this 12th day of November, 2025, for the reasons aforesaid,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 36) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff shall file her Pretrial Statement by **December 1, 2025** and Defendants shall file their Pretrial Statement by **December 15, 2025**.

**IT IS FURTHER ORDERED** that counsel for the parties shall meet and confer and file a Joint Status Report by **December 22, 2025** advising (a) if they agree to refer this matter back to ADR or to a judicial settlement conference, and (b) as to both counsel's availability for trial; and

**FINALLY**, the Court will convene a video status conference with counsel on **January 12, 2026 at 10:00 a.m.**  Dial-in information will be forwarded prior to the proceeding.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

cc/ecf:  All counsel of record