IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RACHEL SWANSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 24-1622 |
| v. ) | Judge Nora Barry Fischer |
| ) | |
| DR. DON CHAPMAN, DDS, PLLC, and ) | Docket Nos. 70 and 72 |
| DONALD C. CHAPMAN, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER
ON DEFENDANTS' MOTIONS IN LIMINE**

**I.     INTRODUCTION**

As noted in this Court's Memorandum Opinion denying Defendants' Motion for Summary Judgment (Docket No. 52), Plaintiff, Rachel Swanson, alleges that Defendants, Dr. Donald C. Chapman and his dental practice company, Dr. Don Chapman, DDS, PLLC, terminated her employment because she opposed unlawful practice(s) of sexual harassment - a retaliatory termination in violation of (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a); the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. § 955(e); and the West Virginia Human Rights Act, W. Va. Code § 16B-17-9(7)(C). (Docket No.19, Plaintiff's Amended Complaint).

Presently before the Court are Defendants' Motions in Limine, the parties' responsive briefings, and supportive exhibits. (Docket Nos. 70-73, 76-77, 80-83). Said motions having been fully briefed, and the Court having afforded them full consideration, they will be denied for the reasons and by the Order set forth below.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     Factual History

The factual history of this litigation has been presented in the parties' prior filings and this Court's prior Opinions.  The subject claims arise from Plaintiff's employment and her expressly communicated complaints and objections to (1) other female employees' subjection to sexual harassment and (2) the timing and nature of Defendants' response (or lack thereof) to those employees' complaints, reported to him, of sexual harassment by Dr. John Powe ("Powe"), a periodontist employed/retained by Defendants from early 2023 through October of that year.[1]

More specifically, as set forth in Section II of the Court's Memorandum Opinion on Summary Judgment:

> Plaintiff was employed as Defendants' Chief Operating Officer from July 2020 through February 2024, and in that position generally handled "human resources" ("HR") issues, including complaints of sexual harassment, in the absence of an HR department or other designated employee. (Docket No. 19 at ¶¶ 11-12, 19).  In May 2023, a female employee whom she supervised reported that Powe had made an unwelcome/inappropriate sexual remark; Plaintiff reported it to Dr. Chapman, who appeared to dismiss it.  (Docket No. 41 at 4). *See also* Docket No. 42 at ¶¶ 10-11, 14-17).
>
> In late August 2023, an employee informed Plaintiff that Powe sexually harassed her a few days prior and had unwanted/inappropriate physical contact with another employee at a practice office earlier that month.  Both women then told Plaintiff that they had informed Dr. Chapman of the incidents within a day of their occurrence, he "directed both of them not to tell Plaintiff what occurred", and although he said he would handle it, they felt nothing was being done.  With the employees on the call, Plaintiff confronted Dr. Chapman regarding these complaints; Dr. Chapman indicated that he did not want her to know because he had anticipated she would be quite upset and unreservedly express it ("freak[ ] out").  (Docket No. 41 at 5*;* Docket No. 42 at ¶¶ 18-38).
>
> In that and subsequent conversations, Plaintiff emphatically communicated to Dr. Chapman that she was distressed that: the practice had failed its employees; what Powe did was "not ok"; Dr. Chapman had kept knowledge of the alleged sexual

---

[1] Powe's alleged sexual harassment included both verbal advances and inappropriate physical contact. (*Id.*). Defendants' pre-hiring background check of Powe indicated he had been acquitted of a criminal charge of, Dr. Chapman believes, inappropriate physical conduct (kissing a patient).  (Docket No. 45-1 (Defendant's Deposition) at 26-27).

harassment and inappropriate touching from her; and (in her strong opinion) Defendants were failing to appropriately address the very serious matter of Dr. Powe's misconduct - including by failing to (1) promptly obtain legal/professional/HR guidance regarding what investigation/action(s) to take as to Powe (*e.g.*, perhaps disciplining Powe and/or suspending his employment), and (2) institute practice procedure changes sufficient to protect employees (and perhaps patients) from sexual harassment. (Docket No. 42 at ¶¶ 34-48; *see also* Docket No. 19 at ¶¶ 32-37). When requested by Dr. Chapman, Powe refused to do sexual harassment training and, after additional incident(s) of sexual harassment/misconduct, his employment was ultimately terminated on October 12, 2023. (Docket No. 42 at ¶ 49-51; Docket No. 45-1 at 51-56).

Dr. Chapman's working relationship with Plaintiff became strained throughout the interval of tension over Powe, during which her "pushing" frustrated and annoyed him, as he acknowledges in his deposition testimony. (Docket No. 42 at ¶ 53, citing testimony exhibits). And it continued to deteriorate as Dr. Chapman felt he could no longer trust Plaintiff, accused and reprimanded Plaintiff for alleged wrongs, reduced her work, and excluded her from meetings. (Docket No. 19 at ¶¶ 38-47; *cf.* Docket No. 42 at ¶ 54). Plaintiff was terminated approximately four (4) months later, on February 6, 2024, on the allegedly pretextual grounds of the elimination of her position due to financial difficulties. (Docket No. 19 at ¶¶ 48-55).

In response to Plaintiff's March 4, 2024 Equal Employment Opportunity Commission ("EEOC") Charge of discriminatory termination (prepared by his counsel and which he reviewed), Dr. Chapman indicated that once Plaintiff became aware of the sexual harassment complaints, she "openly and at times disrespectfully and unprofessionally challenged [him] about the situation and how it was being handled and made [ill-informed] accusations about [Defendant's] response to the complaints". (Docket No. 42 at ¶ 39).

(Docket No. 52 at 2-4) (footnotes omitted).

**B.     Procedural History**

Defendants' Motions in Limine seek to exclude evidence at trial regarding two instances of alleged sexual misconduct by Dr. Powe: the May 2023 incident of Powe's alleged unwelcome sexual comments/misconduct toward employee "Ms. Zoe" (motion at Docket No. 70) and a Fall 2023 incident of Powe's alleged sexual assault on his assistant (motion at Docket No. 72). Defendants contend that introduction of evidence regarding the alleged May 2023 misconduct should be excluded because (1) it was not identified in Plaintiff's Charge filed with the EEOC/PHRC or in her Complaint/Amended Complaint; (2) it is not relevant to Plaintiff's claims;

3

and, even if relevant, (3) its probative value is substantially outweighed by the unfair prejudice, confusion of issues, and misleading that would result from its introduction. (Docket No. 70 at 1). They further similarly contend that introduction of evidence regarding the alleged Fall 2023 assault should be excluded because (1) it is not relevant to Plaintiff's claims; and, even if relevant, (2) its probative value is substantially outweighed by the unfair prejudice, confusion of issues, and misleading that would result from its introduction. (Docket No. 72 at 1).[2]

Plaintiff's response, with which the Court substantially concurs on the law and its application hereto, is incorporated in Section IV.

### III.   APPLICABLE LEGAL STANDARD

As Plaintiff correctly observes,[3] evidence is "relevant" if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. And relevant evidence is admissible unless the Constitution, a federal statute, another Rule of Evidence, or another rule of the Supreme Court provides otherwise. Fed. R. Evid. 402. Moreover, the "definition of relevant evidence is very broad." *Gibson v. Mayor & Council of Wilmington*, 355 F.3d at 215, 232 (3d Cir. 2004). "Because the rule makes evidence relevant 'if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has no tendency to prove the fact.'" *Blancha v. Raymark Industries*, 972 F.2d 507, 514 (3d Cir. 1992) (quoting 22 Charles A. Wright & Kenneth W. Graham, r., *Federal Practice and Procedure*: Evidence § 5166, at 74 n.47 (1978)).

---

[2] *See also* Section IV (discussing Defendants' mistaken conclusion that Plaintiff's "failure to allege/identify these incidents as ones which she "opposed" precludes their introduction at trial as evidence which is either (1) irrelevant or (2) more probative than prejudicial/confusing/misleading"); Docket No. 80 at 1-2 ("The issue is not, however, whether Plaintiff knew, or when Plaintiff learned, about the alleged May 2023 incident and [Defendant's] response to the same; instead, the issue is whether Plaintiff opposed the alleged May 2023 incident, as is required to establish her prima facie case of retaliation under Title VII."); Docket No. 81 at 2.

[3] *See* Docket No. 76 at 3-6.

A court may, however, "exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury …" Fed. R. Evid. 403. Evidence is "unfairly prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.'" *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980). The regard for potential prejudice is tempered by the observation that "probative evidence of discriminatory intent will necessarily prejudice the defendant's case. . . . [T]he question is whether it will do so unfairly." *Pleasants v. Allbaugh*, 285 F. Supp. 2d 53, 55 (D.D.C. 2003); *see also* Advisory Committee Note, Fed. R. Evid. 403 (1972)("A great deal of evidence is prejudicial to one side or the other. . . . 'Unfair prejudice' means 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one'"). As further noted by the Advisory Committee, "[t]he question is whether the probative value of the evidence is *substantially outweighed* by the danger of unfair prejudice." *Id.* (emphasis added).[4]

---

[4] Defendants provide, as their statement of the applicable legal standard, two paragraphs on the administrative procedural requirements of Title VII, with a footnote regarding the standard for this Court's consideration of motions in limine. The Court notes that to the extent Defendants appear to assert that the same requirements of administrative exhaustion that restrict a plaintiff's right to bring *claims* in a subsequent action also apply to restrict the admissibility of relevant *evidence* at trial of claims properly brought, their assertion is novel and mistaken. *Cf. e.g.,* Docket No. 71 at 3-4 and n. 1. *Cf. also* Docket No. 77 at 2-3 ( "Defendants treat the absence of a particular factual allegation from Plaintiff's EEOC charge and Complaint as a basis to exclude evidence at trial, and in doing so improperly collapse the distinction[s] between whether a claim may be brought at all, whether it has been properly pleaded, and how that claim may be proven at trial.").

*Cf. also id.* at 5 (asserting that, even if it had some relevance, to allow Plaintiff to introduce evidence of conduct that she did not "oppose" would equate to allowing her to expand the scope of her claim and, in this way, be prejudicial, confusing and misleading); *id.* at 3, n. 1 (observing, as to standard on motion, that Court should grant motion in limine if it finds that the evidence is "clearly inadmissible on all potential grounds . . . to ensure that juries are not exposed to unfairly prejudicial, confusing, or irrelevant evidence") (citing *Johnstown Heart & Vascular Ctr., Inc. v. AVR Mgmt., LLC*, 2019 U.S. Dist. LEXIS 131234, at *7 (W.D. Pa. Aug. 6, 2019)).

## IV.   DISCUSSION

Defendants' briefing makes much of Plaintiff's asserted omission of the May and Fall 2023 incidents from her Charge and Complaints,[5] and concludes that her failure to allege/identify these incidents as ones which she "opposed" precludes their introduction at trial as evidence which is either (1) irrelevant or (2) more probative than prejudicial/confusing/misleading.[6]  But, as in their Motion for Summary Judgment (based on a surprising assertion that Dr. Chapman's COO and HR administrative employee's "accusator[ial]" and emphatic expression of objection to his action/inaction in response to Powe's alleged sexual misconduct was merely an "opinion" which failed to meet the *prima facie* element of "opposition"), Defendants again widely miss the mark.

Plaintiff's "annoying" exchanges with Dr. Chapman "regarding Powe's sexual harassment of other of Defendants' female employees and her admonitions/insistence it be promptly addressed were a quintessential example of an employee opposing an unlawful employment practice." (Docket No. 52 at 7).  And Plaintiff need not have also "opposed" additional instances of Powe's alleged sexual misconduct for that misconduct to be "relevant" to the likelihood of one or more core fact(s) of her claim  (*e.g.*, that Powe was engaging in opportunistic sexual misconduct targeting Defendants' employees, on their premises, and Defendants delayed and took inadequate action in response).[7]   More specifically, the May 2023 incident is relevant evidence that Dr.

---

[5] *But see* n. 7, *infra* (Plaintiff's citation to EEOC/Complaint references to alleged Fall 2023 assault).

[6] *See e.g.*, Docket No. 71 at 2-3 ("Plaintiff testified that she informed Dr. Chapman about the alleged May 2023 incident, but she did not testify that she confronted Dr. Chapman about the incident or his response thereto, nor did she testify that Dr. Chapman retaliated against her for informing him about the incident.").

[7]  *Cf.* Docket No. 76 at 2 (Plaintiff's assertion that she learned of Powe's Fall 2023 assault on his assistant (which allegedly occurred in late August 2023) in December of that year, and that she then opposed it by telling Dr. Chapman that the assault would not have occurred had he taken action sooner) (citing Amended Complaint, Docket No. 19 at ¶¶ 35-36); Docket No. 82 at 2 (Plaintiff's assertion that her reporting of the May 2023 incident was opposition to it, as referenced in her Concise Statement of Material Facts and Brief in Opposition to Motion for Summary Judgment). As reflected in the text to this note above, the Court deems these assertions unnecessary to its decision.  *Cf.* Docket No. 83 at 2.  Defendants provide no case or other law to the contrary.

Chapman was aware of Powe's sexual misconduct toward an employee at that time and failed to act, while the Fall 2023 incident is relevant evidence of Powe's continuing sexual predation - *i.e.*, an alleged sexual assault (on another professionally subordinate woman) - perpetrated on Defendants' premises during the interval in which Defendants hesitated to take action against Powe to protect their employees (and others), and after which Plaintiff was terminated, allegedly in retaliation for her "frustrating" exacerbation of his difficult situation.

As Plaintiff rightly asserts, evidence of both Powe's alleged May 2023 unwelcome sexual advances toward Defendants' employee and his alleged Fall 2023 sexual assault on his assistant on Defendants' premises is relevant to, *e.g.*, Plaintiff's reasonable belief that Powe was engaged in sexual misconduct/predation and that Defendants engaged in an unlawful employment practice by permitting a sexually hostile work environment. *See e.g.*, Docket No. 76 at 4; Docket No. 77 at 6. And although Defendants allege prejudice, they do so without explanation. Nor do they present argument/analysis that the probative value of the evidence is "substantially outweighed" by the danger of unfair prejudice or confusing/misleading the jury – a thing that, were there a showing of unfair prejudice, they would also be required to establish. *Id.* at 6 (citing Docket No. 73 at 5).

Accordingly, the Court finds that (1) the challenged evidence clearly meets the threshold of relevance (*i.e.*, it "tends to make a fact [pertinent to the claim] more … probable than it would be without" that evidence) and (2) Defendants have failed to show its probative value is

---

*See also id.* at 3 (noting with citations to record that this incident was referenced in Plaintiff's Complaint and EEOC charge, the assistant was listed as a witness in her Initial Disclosures, and it was explored by her counsel during Dr. Chapman's deposition). *Cf.* Docket No. 77 at 6 (noting that Defendants' inclusion of Ms. Zoe as a witness in their Initial Disclosures, and production of her statement regarding the May 2023 incident (a statement of which Plaintiff had been unaware), made the relevance of this evidence more apparent).

"substantially outweighed" by a danger of unfair prejudice or of confusing or misleading the jury. *See* Fed. R. Evid. 401(a) and 403.  Defendants' Motions in Limine will therefore be denied.

An appropriate Order follows below.

## ORDER

**AND NOW**, this **6th day of February, 2026**, for the reasons aforesaid,

**IT IS HEREBY ORDERED** that Defendants' Motions in Limine (Docket Nos. 70 and 72) are **DENIED.**

**IT IS FURTHER ORDERED** that counsel for the parties shall meet and confer and file a Joint Status Report by **February 16, 2026** advising if they agree to (a) refer this matter back to ADR; (b) request judicial settlement assistance in the form of a conference with the below-signed Judge, or (c) continue to meet and confer toward settlement between themselves; and

**FINALLY**, the Court will convene a Zoom status conference with counsel on **February 20, 2026 at 10:00 a.m.**, at which a court reporter will be present.  The video conference link will be forwarded to counsel in advance.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

cc/ecf:  All counsel of record