## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RACHAEL SWANSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 24-1622 |
| | ) | Judge Nora Barry Fischer |
| DR. DON CHAPMAN, DDS, PLLC, and | ) | |
| DONALD C. CHAPMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.    BACKGROUND

This employment discrimination case involving Plaintiff Rachael Swanson's claims that she was terminated in retaliation for her opposition to sexual harassment by Dr. John Powe against her coworkers at Pennsylvania dental offices operated by Dr. Donald Chapman and his dental practice, Dr. Don Chapman, DDS, PLLC, ("Defendant PLLC"), is set for jury selection and trial on August 17, 2026.  In her Amended Complaint, Plaintiff admits that she lived and worked in Pennsylvania and that the events of this case took place in Pennsylvania but asserts retaliation claims under Title VII, and "to the extent" each applies, the Pennsylvania Human Relations Act ("PHRA") and the West Virginia Human Rights Act ("WVHRA").  (*See* Docket No. 19).  Defendants argue that her WVHRA claim fails as a matter of law because there is an insufficient connection between the claims and the state of West Virginia, and they have signaled that they intend to raise that issue in a Rule 50 motion for judgment as a matter of law.  (Docket Nos. 65; 125; 132; 138).  At this stage, Plaintiff maintains that because Defendants did not file a pretrial motion contesting the WVHRA claim that all three of her causes of action should proceed to trial

1

and the Court should decide this issue at the conclusion of the evidence in the context of motions for judgment as a matter of law.  (Docket Nos. 131; 138).

The issue is significant for several reasons.  First, Plaintiff's Title VII claim is against Defendant PLLC only as there is no individual liability under Title VII and there is a $50,000 statutory cap on compensatory and punitive damages for a claim against a business the size of Defendant PLLC.  *See* 42 U.S.C. § 1981a(b)(3)(A).  Second, the PHRA does not permit the recovery of punitive damages while the WVHRA authorizes an award of punitive damages up to $500,000 if the Plaintiff can show by clear and convincing evidence that the Defendants acted with malice or reckless indifference.  *See Hoy v. Angelone*, 554 Pa. 134, 142, 720 A.2d 745, 749 (Pa. 1998); *see also CSX Transp., Inc. v. Smith*, 229 W. Va. 316, 338, 729 S.E.2d 151, 173 (W. Va. 2012). Third, although Plaintiff expressly pled that she was seeking punitive damages under the WVHRA against Defendant PLLC only, she is now attempting to pursue punitive damages against Dr. Chapman individually.  (*See* Docket No. 19 at ¶ 68.e; 122 at 10-12; 131 at 6-8).  Fourth, Plaintiff withdrew her motion to bifurcate such that the trial will not be conducted in phases and the evidence relevant to punitive damages (i.e., the assets of Defendant PLLC and/or Dr. Chapman individually) would be presented at trial along with a limiting instruction. (Docket No. 118).  Fifth, the parties do not dispute that Defendant PLLC is an employer for purposes of Title VII and the PHRA but Defendants contest whether Defendant PLLC employed a sufficient number of employees in West Virginia during 2023 and 2024 for it to meet the statutory definition of employing 12 or more employees for more than 20 weeks in either of those years.  (Docket Nos. 125; 132).

The Court has received and reviewed the parties' Trial Briefs and Supplemental Briefs addressing punitive damages and the applicability of the WVHRA, heard oral argument at the final

pretrial conference, and reviewed the transcript which was produced on an expedited basis.  (See Docket Nos. 122; 125; 131; 132; 138).  After careful consideration of the parties' positions and for the following reasons, the Court finds that an analysis of the conflicts between Pennsylvania and West Virginia antidiscrimination laws is necessary, and that evaluating the facts and circumstances of this case under Pennsylvania choice-of-law rules leads to the inexorable conclusion that the PHRA is applicable in this matter.  Accordingly, Plaintiff's WVHRA claim fails as a matter of law and will be dismissed.

## II.    DISCUSSION

### A.  Choice-of-Law

At the outset,[1] the Court overrules Plaintiff's position that Defendants waived any objections to choice-of-law at this stage of the case and that it would be premature to decide the issue now.  (Docket Nos. 131 at 1, n.1; 138 at 54-55).  Despite the Court's directives that the parties be prepared to address all outstanding legal issues at the final pretrial conference, Plaintiff has not cited any authority in support of these contentions and the Court's research indicates that they are without merit.

To that end, while choice-of-law issues are often litigated and decided concurrently with substantive motions to dismiss, motions for summary judgment and/or motions in limine, neither the Federal Rules of Civil Procedure nor the Court's Case Management Order set a deadline for a party to raise choice of law issues and the U.S. Court of Appeals for the Third Circuit has recognized that a choice of law issue is waived on appeal only if it is not raised before the District Court.  *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014) ("All U.S. Courts of Appeals to have addressed the issue have held that choice-of-law issues may be waived" by not

---

[1]    Because the facts of this matter are set forth in prior decisions, the Court proceeds to its discussion of the applicable law without restating same.  (*See* Docket Nos. 52; 79; 84).

raising the issue before the District Court.).  As one District Court has held in a similar scenario, "the choice-of-law issue ought to have been settled well in advance of trial, [but] ... the parties' collective failure to raise the issue does not foreclose its consideration." *Lologo v. Wal-Mart Stores, Inc.*, No. 2:13-CV-1493-GMN-PAL, 2016 WL 4162631, at *4 (D. Nev. Aug. 3, 2016); *cf. Hoffman v. L&M Arts*, No. 3:10-CV-0953-D, 2013 WL 12284483, at *1 (N.D. Tex. Sept. 5, 2013) ("Although it is often helpful to resolve such issues pretrial, absent a court-ordered deadline, a party can wait until trial to raise a choice of law issue, such as during a Rule 50(a) motion for judgment as a matter of law or when addressing the jury charge.").  Here, Plaintiff placed the conflict squarely before the Court in her Amended Complaint by presenting alternative claims with qualifying language asserting them only "to the extent that" the PHRA or the WVHRA apply in Counts II and III.  (Docket No. 19 at ¶¶ 61, 65).  In response to those allegations, Defendants have done more than enough to preserve the choice-of-law issue as they have argued that the WVHRA does not apply in their Pretrial Statement filed on December 15, 2025, their Trial Brief dated July 29, 2026, their Supplemental Trial Brief submitted on August 5, 2026, and during oral argument at the final pretrial conference.  *See* Docket Nos. 65; 125; 132; 136; *see also Jaurequi v. John Deere Co.*, 986 F.2d 170, 173 (7th Cir. 1993) ("To preserve a choice-of-law issue for appeal, Jaurequi need only notify the court in a timely manner of the applicability of another state's law."). The issue has therefore been sufficiently teed up for a decision by the Court.

Next, it is within the Court's discretion to determine the best time to make its ruling on the choice of law issue and a pretrial ruling is in the interests of justice given all of the facts and circumstances at issue in this case.  *Cf. United States v. Schiff*, 602 F.3d 152, 176 (3d Cir. 2010) (citations omitted) ("We give a district court broad discretion in its rulings concerning case management both before and during trial.").  Indeed, the Court is directed by Rule 16 of the Federal

Rules of Civil Procedure and Local Rule 16.1.D. 5 and 6 of the Local Rules for the Western District of Pennsylvania to convene a final pretrial conference and address outstanding legal questions disputed by the parties in advance of trial. *See* Fed. R. Civ. P. 16(e); *see also* W.D.Pa. LCvR. 16.1.D.5, 16.1.D.6. Consistent with the directives of Rule 1, pretrial rulings by the Court are encouraged if they will narrow the legal issues in dispute between the parties so that the case can be tried before the jury as efficiently as possible. *See* Fed. R. Civ. P. 1 (rules of Civil Procedure are to be "construed, administered and employed to secure the just, speedy, and inexpensive determination of every action and proceeding."); *cf.* Fed. Jud. Ctr., *Benchbook for United States District Courts,* at § V.D.1 (7th ed. 2026) ("Narrowing and refining the issues and ruling in advance on as many issues as the record permits allow the court and parties to conduct the trial more efficiently and within the time allotted on the court's calendar."). The same is true here as a pretrial ruling on this dispute will resolve an important issue affecting the scope of evidence at trial, the parties' Rule 50 motions, limiting instructions, and the final jury instructions. Hence, the Court exercises its discretion to decide the question before jury selection commences.

Moving on, the Court also rejects Plaintiff's unsupported position that her claims under the PHRA and WVHRA are coextensive and can be adjudicated at the same trial because they are based on remedial statutory schemes as opposed to common law theories. (Docket No. 138 at 54 ("I think these choice-of-law issues typically come in common law claims, whether it's a personal injury or a breach of contract action. I don't believe it applies in a statutory setting if the statute otherwise would apply. And I believe in both Pennsylvania and West Virginia, both laws apply.")). To the contrary, caselaw from the U.S. Court of Appeals for the Third Circuit makes clear that Plaintiff bears the burden to prove that West Virginia substantive law applies under Pennsylvania choice of law rules. *See Walters v. Safelite Fulfillment Inc.*, App. No. 21-2054, 2022 WL

5

15377887, at *2 (3d Cir. 2022) (appellant had the burden to prove that "New Jersey substantive law applies" under New Jersey choice of law rules in employment discrimination case litigated in the District of New Jersey). To that end, the Court's research has located numerous decisions analyzing conflicts between state antidiscrimination laws. *See e.g., McBride v. Entercom Communications Corp.*, 2020 WL 12740574 (E.D. Pa. Oct. 15, 2020) (resolving conflict between PHRA and New Jersey Law Against Discrimination ("NJLAD")); *Donovan v. W.R. Berkley Corp.*, 566 F. Supp. 3d 224 (D. N.J. Oct. 8, 2021) (analyzing conflict between New York State Human Rights Law and NJLAD); *Hernandez v. Off. of the Comm'r of Baseball*, No. 18-CV-9035 (JPO), 2019 WL 3034841, at *2 (S.D. N.Y. July 11, 2019) (citations omitted) (analyzing conflict between New York and Ohio antidiscrimination statutes); *Walters*, 2022 WL 15377887, at *2 (deciding conflict between New Jersey and Connecticut employment discrimination statutes). Indeed, courts have recognized that "[i]t is well established that where a plaintiff challenges a single course of employer conduct under the laws of two different states, such circumstances present a choice of law question." *Hernandez*, 2019 WL 3034841, at *2. That is precisely the case here as Plaintiff is claiming compensatory and punitive damages arising from a single alleged retaliatory discharge under the two separate statutory schemes. (*See* Docket No. 19). Since Plaintiff has not elected which theory she will pursue at the upcoming trial, the Court must continue to evaluate and decide the choice-of-law issues in this case.

The U.S. Court of Appeals for the Third Circuit has held that state law claims "within federal supplemental jurisdiction, *see* 28 U.S.C. § 1367(a), […] are governed by choice-of-law rules of the forum state." *Oldham v. Pennsylvania State University*, 138 F.4th 731, 748 (3d Cir. 2025) (citing *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179, n.8 (3d Cir. 1992)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Pennsylvania conflicts law has combined a

"governmental interest analysis" with the Restatement (Second) of Conflicts theory, thereby adopting a "hybrid" approach. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (citing *Melville v. American Home Assur. Co.*, 584 F.2d 1306 (3d Cir. 1978) and *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (Pa. 1964)); *see also McDonald v. Whitewater Challengers, Inc.*, 116 A.3d 99, 106-07 (Pa. Super. Ct. 2015) (same).

This approach requires the Court to first determine whether there is a relevant difference between the law of the jurisdictions whose laws potentially apply, i.e., whether there is a conflict. *Hammersmith*, 480 F.3d at 230. If their respective laws are the same, there is no conflict at all and the choice of law analysis ends; the law of the forum, here Pennsylvania law, would apply. *Id*. If the laws differ, the Court must examine the policies underlying the law of each jurisdiction and determine whether the conflict is "true," "false,"[2] or "unprovided for."[3] *Id.*

"A true conflict exists when the governmental interests of [multiple] jurisdictions would be impaired if their law were not applied." *Budget Rent-A-Car Sys. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005) (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 & n. 15 (3d Cir. 1991)). If a true conflict exists, the Court must then determine which state has the "greater interest in the application of its law." *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854, 856 (1970). To this end, the Court must weigh each state's contacts on a qualitative scale according to their relation to the policies and interests underlying the particular issue.[4] *Hammersmith*, 480 F.3d at 231 (citing

---

[2]    A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of another jurisdiction's law. *Budget Rent-A-Car*, 407 F.3d at 170. When there is a false conflict, the court must apply the law of the only interested jurisdiction. *Id.*

[3]    If no jurisdiction's interests would be impaired if its laws were not applied, there is an "unprovided for" conflict and lex loci delicti (the law of the place of the wrong) continues to govern. *Budget Rent-A-Car Sys.*, 407 F.3d at 170 (citing *Miller v. Gay*, 323 Pa. Super. 466, 470 A.2d 1353 (1983)).

[4]    Pennsylvania choice of law analysis "employs depecage, the principle whereby 'different states' laws may apply to different issues in a single case." *Taylor*, 265 F. App'x at 91 (citing *Berg Chilling*, 435 F.3d at 462; *see also McDonald*, 116 A.3d at 121, n.16. In employment discrimination claims such as this one, courts typically apply the relevant contacts for torts set forth in Restatement (Second) of Conflict of Laws § 145(2)(a)-(d). *See Walters*, 2022

*Shields v. Consol. Rail Corp.*, 810 F.2d 397, 400 (3d Cir. 1987)).

In this Court's estimation, there is a true conflict of laws because the PHRA does not permit the recovery of punitive damages while the WVHRA authorizes punitive damages upon a showing of malice or reckless indifference of defendants by clear and convincing evidence. *See Budget Rent-A-Car Sys.*, 407 F.3d at 170. There is a further conflict between the laws of both jurisdictions as the PHRA defines an employer broadly to include entities that employ only four employees, but the WVHRA defines an employer more restrictively, covering entities that employ 12 or more employees for 20 weeks in the year of the challenged employment decision or the preceding year. *See id.*

As for the policy reasons for the PHRA, Pennsylvania courts have recognized that the legislature intentionally exempts certain small businesses from liability but covers a larger number of employees and employers than the federal counterpart under Title VII. *See Weaver v. Harpster*, 601 Pa. 488, 975 A.2d 555, 568-70 (Pa. 2009). Pennsylvania courts have also concluded that punitive damages are not "consistent with the remedial nature of the [PHRA.]" *Hoy*, 554 Pa. at 142. Taken together, these provisions make clear that the legislature was concerned with ensuring that more potential plaintiffs were eligible for relief from a greater number of employers but limited the remedies against those employers to compensatory damages while exempting only the smallest businesses employing less than four employees. *See Weaver*, 975 A.2d at 568-70; *see*

---

WL 15377887, at *4; *see also Chinchilla v. Geodis Am., Inc.*, No. CV231995MASTJB, 2024 WL 943424, at *7 (D.N.J. Mar. 5, 2024). Those factors include:

> (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

*Taylor v. Mooney Aircraft Corp.*, 265 F. App'x. 87, 91 (3d Cir. 2008); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971) (listing additional factors).

8

*also Hoy*, 720 A.2d at 749.  It appears to the Court that Pennsylvania's interests would be impaired if the PHRA was not applied in this case because punitive damages would both be available to an employee and against an employer that would otherwise not be subject to same.  *See Budget Rent-A-Car Sys.*, 407 F.3d at 170.

The policies underlying the West Virginia statutory scheme are different.  In enacting the WVHRA, the legislature declared that "[i]t is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment," which is "a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, age, blindness or disability."  W. Va. Code Ann. § 5-11-2 (eff. 1998).  Although the WVHRA more narrowly defines employer, punitive damages up to $500,000 are available to plaintiffs upon a showing that an employer acted with malice or reckless indifference by clear and convincing evidence.  *See CSX Transp., Inc.*, 229 W. Va. at 338. West Virginia law therefore broadly promotes the interests of plaintiffs and does not protect defendant entities or individuals from being punished for engaging in conduct warranting the imposition of punitive damages.  *See id.*  Thus, it likewise appears to the Court that West Virginia law would be impaired if the PHRA is applied because punitive damages would not be available to Plaintiff and Defendants would not be subject to punitive damages if their conduct met the applicable standards. *See Budget Rent-A-Car Sys.*, 407 F.3d at 170.

Since the laws of both states would be impaired, the Court proceeds to the evaluation of the relevant contacts of the separate jurisdictions.  Overall, it appears to the Court that Pennsylvania has a significantly greater interest in the application of its laws to the instant dispute as there are more qualitative contracts with the Commonwealth than the State of West Virginia.  Among other things, Pennsylvania is:

- The state of Plaintiff's residence and where she paid state taxes on the wages she earned from her prior work for Defendants, as reflected on her W2;

- The state where Defendant operated three dental offices in Moon, McMurray and Salisbury, Pennsylvania from the summer of 2023 through the termination of Plaintiff's employment in February of 2024;

- The state where the relationship between Plaintiff and Defendants is centered as she primarily worked from a home office in Pennsylvania and the McMurray, Pennsylvania office;

- The state where Dr. Powe's alleged sexual harassment against Plaintiff's coworkers during the summer/early fall of 2023 occurred, i.e., at the dental offices operated by Defendants in Moon and Salisbury, Pennsylvania;

- The state where all of Dr. Powe's victims worked;

- The state where Plaintiff felt the harm from her February 7, 2024 termination, including where she lost wages and allegedly experienced emotional distress that she discussed with her mother who is also a Pennsylvania citizen; and,

- The state of the domicile of Defendants for purposes of diversity jurisdiction given that the domicile of a limited liability company is that of its members[5] and Plaintiff's admissions that Dr. Chapman was the sole member and was living in Allegheny County, Pennsylvania at the time the Amended Complaint was filed.

On the other hand, West Virginia has more limited contacts in this case as it is the place where the PLLC was incorporated; where it operated a single office in New Martinsville and 8-9 individuals were consistently employed during the events in question; where Plaintiff worked occasionally given the oversight of the New Martinsville office she had in her former role; and where Defendant

---

[5]    *See GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018) ("a limited liability company is a citizen of all the states of its members.").

Chapman lived for different periods of time, including prior to Plaintiff's termination and most recently after he sold his house in Pennsylvania and moved in with his parents in West Virginia.

With that said, the most significant contacts in this case include that the alleged sexual harassment took place in Pennsylvania, involved Pennsylvania employees of Defendants, Plaintiff opposed the sexual harassment from Pennsylvania, and felt the harm from her termination in Pennsylvania. As Plaintiff is not a citizen of West Virginia, only worked there occasionally, and opposed sexual harassment that took place outside of West Virginia's borders, she cannot invoke the protections of the WVHRA. Given same, the Court resolves the conflict and will apply the PHRA at the trial of this matter.

### B. Judgment on the Pleadings

The Court alternatively holds that if Plaintiff's WVHRA claim was not subject to dismissal under the choice-of-law analysis, that said claim otherwise fails as a matter of law such that the entry of judgment on the pleadings would be appropriate at this time. The Court briefly outlines the reasons for same.

"A court can rule that a party is entitled to judgment under Rule 12(c) sua sponte or upon motion." *Allstate Fire & Cas. Ins. Co. v. Tomasic*, No. 2:25-CV-418, 2025 WL 3165663, at *2 (W.D. Pa. Nov. 12, 2025) (citing *Murray v. Silberstein*, 882 F.2d 61, 64 (3d Cir. 1989)). Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The entry of judgment on the pleadings is appropriate "only if, viewing all the facts in the light most favorable to the nonmoving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012). "[A] court reviewing a motion for judgment on the pleadings considers not only

11

the complaint but also the written answer and attachments to the pleadings." *Allstate Fire & Cas. Ins. Co.*, 2025 WL 3165663, at *2 (citation omitted). The Court is otherwise precluded from considering matters "outside the pleadings," including, among other things, admissions of counsel, discovery materials, and deposition testimony, *see Wolfington v. Reconstructive Orthopaedic Associates II PC*, 935 F.3d 187, 197-98 (3d Cir. 2019), but the entry of judgment on the pleadings "is inappropriate if facts adduced during discovery would preclude the entry of judgment." *Dawkins v. Duquesne Light Co.*, Civ. A. No. 23-733, 2025 WL 2049137, at *2 (W.D. Pa. May 5, 2025) (citing *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 325 (2d Cir. 2011) ("we do not regard *Twombly* as requiring that defendants' Rule 12(c) motion be granted if evidence that had already been produced during discovery would fill the perceived gaps in the Complaint.")).

As the Court outlined at the final pretrial conference, Plaintiff's Amended Complaint is not the product of careful pleading and there are substantial defects in the allegations contained therein. First, Plaintiff references the wrong statutory citation in support of her WVHRA claim as she asserts that Defendants "violated W. Va. Code § § 16B-17-9(7)(C) (formerly § 5-11-9(7)(C))." (Docket No. 15 at ¶¶ 65, 66). However, the law was amended and the version she cites did not become effective until February 8, 2024 – the day after she was terminated by Defendants. *See* W. Va. Code § 16B-17-9(7)(C) (eff. Feb. 8, 2024). Hence, the version applicable to her claims, if any, would be W. Va. Code § 5-11-9-(7)(C). *See* W. Va. Code § 5-11-9(7)(C) (eff. 2016). Second, Plaintiff wrongly alleges that Dr. Chapman himself assaulted one of the employees of the dental practice in ¶ 16 of the Amended Complaint. (*See* Docket No. 19 at ¶ 16). At the final pretrial conference, counsel for both parties (and Dr. Chapman) agreed that the factual allegation at ¶ 16 is not true and orally moved to amend this egregious error to reflect that the assailant was Dr. Powe. (Docket No. 138 at 43-44). Third, Plaintiff asserts that "[i]n 2023, Defendant-PLLC

12

employed at least 12 employees within the state of West Virginia." (Docket No. 19 at ¶ 10).  Yet, as noted above, the statutory definition of "employer" under § 5-11-3(d) is "any person employing twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place or the preceding calendar year."  W. Va. Code § 5-11-3(d) (eff. 1998).  Fourth, in the prayer for relief, Plaintiff specifically alleges that "Defendant-PLLC shall pay Plaintiff punitive damages to punish Defendant PLLC and to deter it and others from like conduct under Counts I [Title VII] and III [WVHRA]."  (Docket No. 19 at ¶ 68.e.).  Thus, the Amended Complaint does not contain any allegations that Plaintiff is seeking punitive damages against Dr. Chapman, individually and provides no notice to him that punitive damages were being sought against him personally.  *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574, 116 S. Ct. 1589, 1598, 134 L. Ed. 2d 809 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.").

While the Court permitted the necessary amendment regarding the incorrect identification of the assailant, the time to cure the remaining defects in the Amended Complaint has long since passed.  To reiterate, the deadline for amendments set forth in the Case Management Order was March 13, 2025, and a party seeking leave to amend a pretrial order after the deadline must show good cause and diligence by counsel.  (*See* Docket No. 116 at 1-2 (citing *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) ("whether 'good cause' exists under Rule 16(b)(4) depends in part on a plaintiff's diligence")).  Plaintiff did not act diligently to correct any of these errors that were pointed out by the Court at the final pretrial conference and they all should have been discovered by counsel before the Amended Complaint was filed on March 6, 2025.  *See*

*Arroyo v. New Jersey Transit Rail Operations, Inc.*, Civ. A. No. 22-4147 (JKS) (JSA), 2026 WL 2111312, at *4 (D.N.J. July 22, 2026) ("When searching for diligence, the Court considers whether the moving party possessed, or should have possessed, the knowledge needed to request an extension before" the deadline.).

The period for fact discovery also expired on July 11, 2025, and there is no basis to reopen discovery at this stage given Plaintiff's admission that her counsel did not conduct any discovery regarding the number of individuals that Defendants employed in West Virginia for twenty weeks during 2023. (*See* Docket No. 138 at 60-61 ("This isn't just a technicality. If the defendants had raised at any time in discovery the company not having 12 employees in West Virginia at the relevant time, I would have taken significant discovery on this issue […] But I had no reason to take discovery into this issue because the defendant admitted in paragraph 10 of their answer that they had 12 employees in West Virginia in 2023.")). Plaintiff is the master of her Amended Complaint and bound by the action (or inaction) by her lawyers on the sufficiency of how the number of employees working in West Virginia was pled and their deliberate legal strategy to not pursue discovery on that issue because they incorrectly thought the admission carried more legal import than it actually did. *See Lehman Bros. Holdings v. Gateway Funding Diversified Mortgage Servs., L.P.*, 785 F.3d 96, 102 (3d Cir. 2015) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (parties cannot "avoid the consequences of the acts or omissions of [their] freely selected agent[s]. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent[.]")); *see also Conway v. A.I. duPont Hosp. for Children*, No. CIV. A. 04-4862, 2009 WL 1492178, at *7 (E.D. Pa. May 26, 2009) ("It is not the job of courts […] to rescue parties from their strategic litigation choices" or "to rescue parties from their own errors."). It remains

Plaintiff's burden to prove all of the essential elements of her claims by a preponderance of the evidence at trial and it is clear from the arguments at the final pretrial conference that Plaintiff is unprepared to meet her burden to show that Defendants qualified as an employer under the WVHRA.  *See* Third Circuit Model Civil Jury Instr. § 1.10 (eff. Mar. 2026).  Accordingly, the WVHRA claim will be dismissed prior to trial.

Beyond these defects, judgment on the pleadings would be appropriate here because Plaintiff's legal theory seeking liability against Defendants under the WVHRA fails as a matter of law.  Plaintiff admits that "[u]pon review of the case law, Plaintiff's counsel was unable to find any opinions that addressed the applicability or inapplicability of the WVHRA to employees in similar circumstances to Ms. Swanson's or Dr. Chapman's. Thus, the Court should review the plain language of the statute and apply it to the facts here."  (Docket No. 131 at 2, n.2).

Section 5-11-9(7)(C) states that it is unlawful for an employer to "[e]ngage in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."  W. Va. Code § 5-11-9(7)(C).  Upon reviewing same, the Supreme Court of Appeals of West Virginia has explained that:

> we hold that W.Va.Code, 5-11-9(7)(C), prohibits an employer or other person from retaliating against any individual for expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the Human Rights Act. This standard has both an objective and a subjective element. The employee's opposition must be reasonable in the sense that it must be based on a set of facts and a legal theory that are plausible. Further, the view must be honestly held and be more than a cover for troublemaking.

*Hanlon v. Chambers*, 195 W. Va. 99, 112, 464 S.E.2d 741, 754 (W. Va. 1995).

Stated differently, in order to engage in protected activity, a plaintiff "must have challenged or otherwise opposed conduct that she reasonably and in good faith believed [was] unlawful under the WVHRA." *Porter v. M.W. Logistics Servs., LLC*, Civ. A. No. 1:18CV122, 2019 WL 4007351, at *7 (N.D.W. Va. Aug. 23, 2019). In light of same, Courts have found that an employee rejecting a sexual advance from a non-employer could not have reasonably believed that she was opposing an unlawful employment practice prohibited under the WVHRA. *See id*. Similarly, an employee did not engage in protected activity when she smacked a patient's hand to reject a sexual advance. *See Bills v. WVNH EMP, LLC*, App. No. 22-2274, 2024 WL 2764716, at *1 (4th Cir. May 30, 2024); *see also Daniels v. DAL Glob. Servs., LLC*, 250 W. Va. 407, 415, 903 S.E.2d 588, 596 (W. Va. Ct. App. 2024) (holding that plaintiff who used medical marijuana did not engage in protected activity because the use of marijuana is not a reasonable accommodation request protected by the WVHRA). The relevant cases therefore stand for the proposition that opposing sexual harassment generally is not enough to bring a claim because a plaintiff needs to oppose sexual harassment or another unlawful employment practice specifically covered by the WVHRA.

Following these cases and the plain language of the statute, it is clear to the Court that Plaintiff has not sufficiently pled that she opposed conduct that violated the WVHRA and her claim fails as a matter of law. Plaintiff admits in her Amended Complaint that "the unlawful employment practices alleged herein occurred in Pennsylvania, and specifically, within the Western District of Pennsylvania," and then pleads a series of events that all took place in Pennsylvania. (Docket No. 19 at ¶ 3). Further, the proffers and arguments at the final pretrial conference demonstrate that the parties agree that the alleged sexual harassment that Plaintiff opposed all took place in Pennsylvania. (*See* Docket No. 138). It is this Court's opinion that Dr. Powe's conduct, at most, violated Title VII and the PHRA but not the WVHRA because Plaintiff

16

could not have a reasonable belief that Dr. Powe's alleged actions toward Defendant PLLC's employees in Pennsylvania somehow violated the WVHRA.[6]  It is simply not a plausible legal theory that sexual harassment in the Pennsylvania workplaces operated by Defendants violated the WVHRA.[7]  Plaintiff has also cited no authority in support of the contention that her actions in calling Dr. Chapman while he was located in West Virginia to oppose the sexual harassment in the Pennsylvania workplaces brings her retaliation claim within the scope of the WVHRA. (Docket No. 131 at 2, n.2).  Since there are no material factual disputes between the parties on this issue, the Court would alternatively enter judgment on the pleadings in favor of Defendants.

Finally, for the reasons explained above, Plaintiff's WVHRA claims against Defendants fail for another independent reason that she has not sufficiently alleged that Defendant PLLC is an employer under the WVHRA.  (Docket No. 19 at ¶ 10).  Again, she pled (and Defendants admitted)

---

[6]     The Court takes judicial notice of Vena's Amended Complaint filed against Dr. Don Chapman, DDS, PLLC in the Court of Common Pleas of Allegheny County.  *See Grasinger v. Caterpillar, Inc.*, Civ. A. No. 21-956, 2023 WL 4846843, at *1 (W.D. Pa. July 28, 2023) (quoting *Johnson v. Allegheny Cnty.*, No. 2:14-CV-857, 2014 WL 5513769, at *2 n.2 (W.D. Pa. Oct. 31, 2014)) ("It is well established that "[t]his Court may properly take judicial notice of docket entries, documents, and opinions filed in other cases.").  The Court notes that Vena has not asserted a claim under the WVHRA as she has brought claims for alleged violations of the PHRA including hostile work environment and quid pro quo sexual harassment as well as common law claim for negligent retention.  *See Vena v. Dr. Don Chapman, DDS, PLLC*, GD-25-008344, Document 10 (C.P. Allegheny Apr. 28, 2026).

[7]     The Court's ruling is further buttressed by the procedural history of the claims in this matter which demonstrates that the EEOC filed the charge with the WV Human Rights Commission on its own and that entity deferred investigation to the EEOC.  To that end, the Notification & Acknowledgement of Dual-Filed Charge from the EEOC dated March 12, 2024, states that:

> This is notice that a charge of employment discrimination, Rachael Swanson v. Dr. Don Chapman, DDS, PLLC was initially received by Pittsburgh Area Office on 03/052024 and will be dual-filed with West Virginia Human Rights Commission.
>
> Pursuant to the worksharing agreement, the Pittsburgh Area Office intends to Investigate Charge.
>
> The West Virginia Human Rights Commission acknowledges receipt of the referenced charge, Rachael Swanson v. Dr. Don Chapman, DDS, PLLC, and intends to Defer Investigation.

(Docket No. 131-6).  Plaintiff has not brought forth any evidence that West Virginia did anything with these claims other than note them on their record.

17

only that Defendant PLLC employed more than 12 individuals in West Virginia in 2023 which is not enough to meet the statutory definition that at least 12 of them worked the requisite 20 weeks during that year. *See* W. Va. Code § 5-11-3(d) (eff. 2016). This is also not a situation where the facts adduced during discovery would fill the perceived gaps in the Amended Complaint given Plaintiff's admissions that they did not conduct discovery on this issue beyond Dr. Chapman's deposition testimony that he employed eight or nine people at the New Martinsville office in 2023. (*See* Docket No. 132-3 at 9-10; 131 at 2, n.2). Plaintiff's suggestion at the final pretrial conference that Dr. Chapman could himself qualify as an employer under the WVHRA fails for the same reason.

All told, even if the Court had determined that the WVHRA applied in this case, the Court would enter judgment on the pleadings in favor of Defendants as the WVHRA claim fails as a matter of law.

III.    CONCLUSION

Based on the foregoing, the Court resolves the conflict between the Pennsylvania and West Virginia antidiscrimination laws in favor of applying the PHRA given all of the facts and circumstances in this case. The Court also alternatively holds that the WVHRA claim fails as a matter of law and that judgment on the pleadings would be entered in favor of Defendants if it was not otherwise subject to dismissal. Accordingly, Count III of Plaintiff's Amended Complaint alleging retaliation in violation of the WVHRA is dismissed, with prejudice.

In light of this ruling, the Court will direct counsel to meet and confer and submit revised joint jury instructions, and a joint verdict slip without the WVHRA claim and to discuss any evidentiary issues related to same. To that end, without any claim for punitive damages against

Dr. Chapman individually, it appears to the Court that evidence of his personal assets is no longer relevant and should not be admitted at trial.  An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated:  August 12, 2026

cc/ecf:  All counsel of record.