**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RACHAEL SWANSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 24-1622 |
| v. | ) | Judge Nora Barry Fischer |
| | ) | |
| DR. DON CHAPMAN, DDS, PLLC, and DONALD C. CHAPMAN, | ) | Docket Nos. 155, 157, 159 |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION ON DEFENDANTS' MOTIONS FOR JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(a)**

## I. INTRODUCTION

In this action, Plaintiff, Rachael Swanson, alleges that Defendants, Dr. Donald C. Chapman and his dental practice company, Dr. Don Chapman, DDS, PLLC ("Defendant PLLC"), terminated her employment because she opposed unlawful practice(s) of sexual harassment – a retaliatory termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. § 955(e). (Docket Nos. 19 and 140-41.).[1]

Jury trial commenced on August 17, 2026. Following the close of Plaintiff's case, on August 19, 2026 Defendants filed Motions for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a) with respect to (A) Protected Activity, (B) Retaliation and (C) Punitive Damages, together with supporting briefs. (Docket Nos. 155-60). Plaintiff filed a responsive brief on

[1] In sum, these claims arise from Plaintiff's employment and her expressly communicated complaints and objections to (1) other female employees' subjection to sexual harassment and (2) the timing and nature of Defendants' response "(or lack thereof)" to those employees' complaints, reportedly directly to him, of sexual harassment by Dr. John Powe ("Powe"), a periodontist employed/retained by Defendants beginning in early 2023. (Docket No. 52 at 2).

Protected Activity,[2] also on August 19, 2026. (Docket No. 154). The parties had previously filed trial briefs that addressed issues raised in Defendants' Motions. (Docket Nos. 122 and 125). The Court heard oral argument the same day and, upon careful consideration of the parties' written briefs as well as the evidence offered during trial, the Court holds, for the reasons set forth below, that Defendants' Motions re Protected Activity (Docket No. 155) and Retaliation (Docket No. 157) will be denied, and Defendants' Motion re Punitive Damages (Docket No. 159) will be granted.

## II. BACKGROUND

The factual history of this litigation was first laid out in some detail in the Court's November 12, 2025 Memorandum Opinion denying Defendants' motion for summary judgment. (Docket No. 52). In relevant part:

Plaintiff was employed by Defendant PLLC in a managerial capacity (ultimately as Chief Operating Officer) from July 2020 through February 2024, and in the course of that employment generally handled "human resources" ("HR") issues, including complaints of sexual harassment, in the absence of an HR department or other designated employee. On August 29, 2023, two co-administrator female employees reported to Plaintiff that they had been sexually harassed by Dr. Powe earlier that month and had reported the incidents to Dr. Chapman but (1) he directed them not to tell Plaintiff what occurred, and (2) although he said he would handle it, they were concerned that nothing was being done. That same day, with the employees on the call, Plaintiff confronted Dr. Chapman, who indicated that he did not want her to know because he had anticipated she would "freak[ ] out".

[2] Plaintiff's Brief Regarding Protected Activity, filed before Defendants' corresponding motion and brief, was "submitted in anticipation" of both Defendants' motion and Plaintiff's planned cross-motion under Rule 50(a). (Docket No. 154 at 1).

In that and subsequent conversations, Plaintiff communicated to Dr. Chapman that she was distressed by Powe's conduct toward female employees; Chapman's excluding her from knowledge of the alleged sexual harassment and inappropriate touching; and the practice's failure to do more to address Dr. Powe's misconduct.[3] When requested by Dr. Chapman, Powe refused to do sexual harassment training and his employment was ultimately terminated on October 12, 2023.

Dr. Chapman's working relationship with Plaintiff became strained throughout the interval of dealing with Powe, during which her "pushing" frustrated and annoyed him. Dr. Chapman came to feel he could no longer trust Plaintiff, accused and reprimanded Plaintiff for alleged wrongs, reduced her job duties, and excluded her from meetings. Plaintiff was terminated approximately four (4) months after Powe's departure, on February 6, 2024, on the allegedly pretextual grounds of the elimination of her position due to financial difficulties and job performance issues.

## III. APPLICABLE STANDARD UNDER RULE 50(a)

Federal Rule of Civil Procedure 50(a) authorizes the entry of judgment as a matter of law (JMOL), providing:

> (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and

[3] In response to Plaintiff's March 4, 2024 Equal Employment Opportunity Commission ("EEOC") Charge of discriminatory termination (prepared by his counsel and which he reviewed), Dr. Chapman indicated that once Plaintiff became aware of the sexual harassment complaints, she "openly and at times disrespectfully and unprofessionally challenged [him] about the situation and how it was being handled and made [ill-informed] accusations about [Defendant's] response to the complaints".

> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

FED. R. CIV. P. 50(a)(1). A motion for relief under Rule 50(a) may be made at any time before the case is submitted to the jury. FED. R. CIV. P. 50(a)(2).[4] Under the standard of review for JMOL, the court is limited to the trial record. *Laymon v. Lobby House, Inc*., 613 F.Supp.2d 504, 510 (D. Del. 2009).

It is well-established that a motion for judgment as a matter of law, whether made under Rule 50(a) or (b), should be granted only "where, viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability"; *i.e.* "there is no question of material fact for the jury". FED. R. CIV. P. 50(a)(1); *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996), cert. denied, 519 U.S. 1151 (1997); *McDaniels v. Flick*, 59 F.3d 446, 453 (3d Cir.1995), cert. denied, 516 U.S. 1146 (1996); *Gagliardo v. Connaught Labs., Inc*., 311 F.3d 565, 568 (3d Cir. 2002). Accordingly, the Court must determine "'whether there are any genuine issues of material fact such that a reasonable jury could return a verdict for [the non-movant].'" *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (quoting *Debiec v. Cabot Corp*., 352 F.3d 117, 128 n.3 (3d Cir. 2003)) (alteration in original).

In determining, on a Rule 50 motion, if the evidence is sufficient to sustain liability, the Court "must refrain from weighing the evidence, determining the credibility of witnesses, or substituting [its] own version of the facts for that of the jury." *Eschelman v. Agere Sys.*, 554 F.3d

---

[4] Courts apply the same standard to motions pursuant to Rule 50(a) and Rule 50(b) of the Federal Rules of Civil Procedure. *See Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011) (reviewing Rule 50(b) motion by using standard articulated in *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996); *McDaniels v. Flick*, 59 F.3d 446 (3d Cir. 1995) (applying the same standard to the review of both Rule 50(a) and Rule 50(b) motions); *Foradori v. Harris*, 523 F.3d 477, 485 n.8 (5th Cir. 2008) ("We apply this same 50(a) standard when we review a renewed motion for judgment as a matter of law under 50(b).").

426, 433 (3d Cir. 2009) (citing *Marra*, 497 F.3d at 300); *Blair v. Manhattan Life Ins. Co*., 692 F.2d 296, 300 (3d Cir.1982). "Although judgment as a matter of law should be granted sparingly,"[5] it should be granted "when, after reviewing the evidence and all reasonable inferences therefrom in the light most favorable to the nonmovant, no jury could decide in that party's favor. *Eschelman*, 554 F.3d at 433; *Gomez v. Allegheny Health Servs., Inc*., 71 F.3d 1079, 1083 (3d Cir. 1995)). To that end, "a scintilla of evidence is not enough" to survive a Rule 50 motion at trial. *Johnson v. Campbell*, 332 F.3d 199, 204 (citing *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 664–65 (3d Cir. 2002)). The question is not whether there is literally no evidence supporting the non-movant, but whether there is evidence upon which a jury could properly find a verdict in that party's favor. *Gomez*, 71 F.3d at 1083. In other words, "a directed verdict is mandated where the facts and the law will reasonably support only one conclusion." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991) (citation omitted). *See also Lightning Lube, Inc. v. Witco Corp*., 4 F.3d 1153, 1166 (3d Cir.1993); *Failla v. City of Passaic*, 146 F.3d 149, 153 (3d Cir.1998); *McDaniels v. Flick*, 59 F.3d 446, 453 (3d Cir.1995); *Eshelman v. Agere Sys., Inc*., 554 F.3d 426, 433 (3d Cir. 2009); *Shrey v. Kontz,* 981 F.Supp.2d 333, 337–38 (M.D. Pa. 2013).

## IV. DISCUSSION

Defendants assert, in seeking judgment as a matter of law on the issues below, that based upon the evidence introduced at trial, Plaintiff has failed to introduce sufficient evidence for a jury to find that (a) she engaged in protected activity in the form of opposition to a practice she reasonably believed was in violation of Title VII; (b) she was terminated because she engaged in

[5] *Walter v. Holiday Inns, Inc*., 985 F.2d 1232, 1238 (3d Cir.1993)

protected activity; or (c) Defendants acted with malice or reckless indifference to her rights when it terminated her employment, entitling her to punitive damages.

**A. Protected Activity in the Form of Opposition**

Defendants' initial contention that Plaintiff does not (and cannot) "meet the initial factor" of her *prima facie* claim – which requires that she prove she engaged in protected activity by "opposing" unlawful conduct – was addressed in the Court's Memorandum Opinion denying summary judgment. (ECF No. 52). That motion rested on Defendants' assertion that Plaintiff did not "oppose" an unlawful practice because she "simply . . . voiced her personal opinion about" Defendants' handling of the investigation in a "very direct" manner. (Docket No. 52 at 2, n. 2). The pending motion now asserts Defendants' more developed contention that Plaintiff did not "oppose" Powe's sexual harassment/misconduct against Defendants' female employees, or Defendants' purported laxity in addressing Powe's conduct, because receiving and communicating such charges was within the scope of her job as Chief Operating Officer of Defendant PLLC, and as its human resources point person. Defendants rely on *Atkinson v. Lafayette College*, 653 F. Supp. 2d 581 (E.D. Pa. 2009), wherein the court surveyed the law and found that "[n]umerous courts dealing with retaliation claims . . . have held that in order to engage in a statutorily protected activity the employee must 'step outside his or her role of representing the company and file an action adverse to the employer, actively assist other employees in asserting . . . rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected . . . .'" *Id.* at 598, quoting *Claudio-Gotay v. Becton Dickenson Caribe, Ltd.*, 375 F.3d 99, 102 (1st Cir. 2004). Under *Atkinson*'s analysis, "where . . . a third party . . . is attempting to help the alleged victim of discrimination assert her rights, 'protected activity' is limited to activity that is adverse to the company, or outside the employee's normal employment role". *Atkinson*,

653 F. Supp. 2d at 596. *See also Metzger v. Coopersburg & Liberty Kenworth, Inc.*, 2025 1809999 125093, *6 (E.D. Pa. July 1, 2025) ("[A] plaintiff's protest of the discrimination of a subordinate third party employee must fall outside the scope of the plaintiff's job 'in order to signal to the employer' that they are engaging in protected activity."). As Defendants point out, the rule that conduct within the scope of an employee's job duties is not protected from retaliation – dubbed the "manager rule" in the Fair Labor Standards Act ("FLSA") cases in which the rule has principally developed – has been applied by Courts of Appeal in multiple contexts in addition to the FLSA, including retaliation cases under the False Claims Act ("FCA") and Title VII. (Docket No. 156 at 6-7 n.3) (citing, *inter alia*, *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 193 (3d Cir. 2001) (FCA), and *EEOC v. HBE Corp.*, 135 F.3d 543, 554 (8th Cir.1998) (Title VII)).[6]

In response, Plaintiff argues that the manager rule is not applicable to retaliation claims under Title VII, as four Courts of Appeals have explicitly held. (Docket No. 154 at 11-12) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 317 n.16 (2d Cir. 2015);[7] *DeMasters v. Carilion Clinic*, 796 F.3d 409, 413 (4th Cir. 2015);[8] *Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 345 (6th Cir. 2021); and *Patterson v. Georgia Pacific LLC*, 38 F.4th 1136, 1147 (11th Cir. 2022)). The Court observes that the Third Circuit has not ruled upon this issue, and district courts within this Circuit are divided. *Compare Trotter, supra* (rejecting applicability of manager rule in Title

---

[6] In *HBE*, the Court rejected Defendants' argument that Plaintiff "did not act in opposition because he did not . . . 'step outside' his employment role", finding that his "refusal to implement a discriminatory company policy . . . placed him outside the normal managerial role." *HBE*, 135 F.3d at 554. Since the purported "step out" requirement was met, the court had no occasion to address whether it is actually a requirement.

[7] As the Second Circuit explained, "the manager rule's focus on an employee's job duties, rather than the oppositional nature of the employee's complaints or criticisms, is inapposite in the context of Title VII retaliation claims." *Littlejohn*, 795 F.3d at 317 n.16.

[8] Plaintiff points out that *DeMasters* was decided by three judges of the Third Circuit, sitting by designation for the Fourth Circuit. (Docket No. 154 at 12). *See Trotter v. United Lutheran Seminary*, 2021 WL 3271233, at *5 (E.D. Pa. July 30, 2021) ("Although the United States Court of Appeals for the Third Circuit has not addressed whether the manager rule applies in Title VII claims, several Third Circuit judges, sitting by designation, have rejected its applicability, and I will do so here.").

VII claims), *with Bradford v. UPMC*, 2008 WL 191706, at *4 (W.D. Pa. Jan. 18, 2008) (applying manager rule to Title VII retaliation claim), *and Metzger*, *supra* (same).

Even if the manager rule were to apply to Plaintiff's claim, a jury could reasonably find that in confronting Dr. Chapman about two employees' sexual harassment complaints (on August 29, 2023 with the employees on the line, and again on December 18, 2023), Plaintiff was "actively assisting other employees" in asserting their rights. Moreover, on the present record (at the close of Plaintiff's case), the Court cannot say with assurance that Plaintiff's interactions with Dr. Chapman concerning the employees' harassment complaints were within the scope of her normal employment role. Defendants have not pointed to evidence that Plaintiff's job duties encompassed directing management as to its compliance obligations under Title VII (*e.g.*, regarding employees' complaints of sexual harassment in its workplace). To the contrary, Plaintiff brought forth in cross-examination Dr. Chapman's statements in an Equal Employment Opportunity Commission filing and a discovery response that Plaintiff's challenge about "the situation and how it was being handled" was disrespectful and unprofessional, and that he instructed Plaintiff not to interfere with the investigation and action taken to address the situation. (Aug. 18, 2026 Rough Trial Transcript at 113-16). And Dr. Chapman even testified that Plaintiff was "yelling and screaming" at him during the August 29, 2023 phone call in which the parties first discussed the employees' complaints. (*Id.* at 116). Considering the facts in the light most favorable to Plaintiff, a jury could reasonably find that Plaintiff stepped outside of her job role and thereby signaled to Defendants that she was engaging in protected activity. Accordingly, Defendants are not entitled to judgment as a matter of law with respect to that issue.

**B. Retaliation**

Defendants assert that Plaintiff has failed to meet her burden to establish that her protected activity was a but-for cause of her termination, as required under applicable case law. *See, e.g.*, *Verma v. Univ. of Pa.*, 533 F. App'x 115, 119 (3d Cir. 2013). Defendants contend that the temporal proximity between the August 29, 2023 phone call and Plaintiff's February, 2024 termination is insufficiently suggestive to support an inference of retaliation, and that the "whole record" establishes that Plaintiff was terminated due to poor job performance and Defendant PLLC's financial troubles. Plaintiff counters that circumstantial evidence including a pattern of antagonism that began "almost immediately" after the August 29, 2023 phone call, shifting explanations for her termination, and the closer temporal proximity between the December 18, 2023 phone call and her termination, support an inference of a causal connection between the call(s) and the termination. *Cf. Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-81 (3d Cir. 2000) (explaining that causation determination turns on "evidence gleaned from the record as a whole"). The Court agrees with Plaintiff that the evidence at the present stage, together with reasonable inferences therefrom (all considered in the light most favorable to Plaintiff) is sufficient to support a finding of causation.

**C. Entitlement to Punitive Damages**

There being no Pennsylvania law provision for punitive damages under the parallel PHRA, Plaintiff's claim for punitive damages can arise only under Title VII. "As a general rule, punitive damages are 'reserved for special circumstances,' when 'the defendant's conduct amounts to something more than a bare violation justifying compensatory damages'". *Vitalis v. Sun Contractors, Inc.*, 481 Fed. App'x 718, 729 (3d Cir. 2012) (citations omitted) (affirming summary dismissal of punitive claim under Title VII in absence of "malicious or outrageous conduct, . . .

reckless indifference to [plaintiff's] civil rights, or any other extraordinary conduct that would permit a reasonable jury to award punitive damages"). Thus, Title VII requires an intentional violation to "establish[ ] a right to compensatory damages" and imposes "another, higher standard . . . to qualify for a punitive award." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999). Thus, a plaintiff may recover punitive damages under Title VII only if a defendant acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

The Supreme Court has explained that "[t]he terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad*, 527 U.S. at 535. Guided by a prior decision from which the statutory standard was derived, the Court found that the "intent standard, at a minimum, required recklessness in its subjective form" – that is, "a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." *Id.* at 536 (quoting *Smith v. Wade*, 461 U.S. 30, 37 n.6, 41 (1983)) (internal quotation marks omitted). "[A] positive element of conscious wrongdoing is always required." *Kolstad*, 527 U.S. at 538 (citation omitted).[9] As the Third Circuit summarized, "[t]hese terms focus on the employer's state of mind and require that 'an employer must *at least* discriminate in the face of a perceived risk that its actions will violate federal law.'" *Gagliardo*, 311 F.3d at 573 (quoting *Kolstad*, 527 U.S. at 535-36) (emphasis added).

Courts have routinely found that plaintiffs have sufficiently evidenced the defendant's reckless indifference to their rights where the record demonstrates that an employer knowingly and repeated refused to address requests for accommodation.[10] But they have also routinely found

[9] *See also id.* at 533-39

[10] *See e.g.*, *Gagliardo*, 311 F.3d at 573 (denying JMOL on plaintiff's ADA punitive damage award where plaintiff produced evidence that 1) her employer knew of her protected status; 2) it refused several requests to accommodate

circumstances in which even an intentional violation of Title VII "does not give rise to punitive damages liability under this standard." As the Court noted in *Kolstad*, "the employer may simply be unaware of the relevant federal prohibition. . . . There will be cases, moreover, in which the employer [holds the] distinct belief that [its action] is lawful. The underlying theory of [Title VII liability] may be novel or otherwise poorly recognized . . . ." *Kolstad*, 527 U.S. at 536–37. Applying the foregoing principles to the present case, the Court finds that although Plaintiff has elicited testimony suggesting that Dr. Chapman understood that a victim's report of sexual harassment is protected by law from retaliation, Plaintiff has not demonstrated Dr. Chapman's awareness that Plaintiff was entitled to similar protection. In particular, Plaintiff has not adduced any evidence of Defendants' subjective awareness that Plaintiff's communications concerning Powe were protected under Title VII, or equivalently, that terminating her in connection with those communications would likely violate the law.

The absence of evidence showing reckless disregard for Plaintiff's rights herein is reinforced by evidence of Dr. Chapman's good-faith efforts to protect the rights of employees who reported being victims of harassment. The Third Circuit has recognized that an employer's good faith efforts to comply with Title VII are inconsistent with the malice or reckless indifference required for punitive damages. *See, e.g.*, *Kant v. Seton Hall Univ.*, 279 Fed. Appx. 152, 158 (3d Cir. 2008) (upholding denial of punitive damages where defendant had made good faith effort by promulgating anti-discrimination policies and creating council against discrimination, and where

---

her; and 3) its human resources representative knew about the governing requirements of the ADA); *Smith v. Holy Family Univ*., 2023 WL 4306740, at *5 (E.D. Pa. June 30, 2023) (jury could reasonably find that defendant university's repeated disregard of requests for accommodation despite knowledge of instructor's MS and limited ability to travel between campus buildings to classes, manifested an indifference arising to at least recklessness, thus warranting punitive damages).

plaintiff had provided no evidence of bad faith); *Ridley v. Costco Wholesale Corp.*, 217 Fed. Appx. 130, 137 (3d Cir. 2007) (noting that employer which subjected employee to retaliatory constructive discharge nonetheless made good-faith efforts to comply with Title VII, and thus was not subject to punitive damages). Here, Defendants attempted to comply with the law by being receptive to affected employees' complaints of sexual harassment, discussing the allegations and Defendants' responsive measures with Powe, consulting a lawyer, limiting Powe's solo contact with staff (*i.e.*, initiating a protective "buddy system" for staff contact), requesting that Powe undergo anti-harassment training, and ultimately firing Powe.[11] As in *Ridley*, "[d]espite the disputed issues of facts as to whether [Defendants'] actions were adequate, a reasonable jury could not conclude from [the] evidence that [they] did not make good-faith efforts to comply with Title VII". *Ridley*, 217 Fed. Appx. at 137.

## V. CONCLUSION

Based on the foregoing, the Court will deny Defendants' Rule 50 motions as to protected activity and retaliation, and grant Defendants' motion as to punitive damages.

An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: August 20, 2026
cc/ecf: All counsel of record.

[11] Although Defendants' Title VII compliance efforts were substantially directed to remedying workplace harassment, the same acts exhibit a solicitude for the rights of complainants, which belies a claim of reckless disregard for such rights.